Let's let the courtroom get cleared here. Okay, Mr. Priest, you may go ahead. I plead the court, Your Honor. Philip W. Price for the appellants. This case is one of the continuing Stanford cases, which most people in this panel have looked at one more time. It's a continuation of the Roland and the Shadbourne case, which went to the United States Supreme Court, of which many of the plaintiffs in this case were plaintiffs at the United States Supreme Court, where the court ruled that the Louisiana securities law was applicable to the action against people that enabled the Stanford Ponzi scheme. This case, which we're talking about today, even though it's a federal arbitration, is the first case that has been tried after the Shadbourne case. Now, as the court is aware, the arbitration panel, despite the fact that the Supreme Court issued a 50-page opinion, issued a one-line opinion saying no recovery. We don't know whether it's because of no duty. We don't know whether we did a good, bad job of presenting the facts. But in any event, the issue for this court is— Is there any money there, assuming that you prevail? Are you going to collect a judgment if you get one? We can collect a judgment against Mr. Farrell's client. Right now, it seems like all the lawyers over in Houston are getting the money. But to date, they've gotten 1 percent, and so they've gotten more than my clients have gotten. But that's for another day in time. But in any event, Your Honor, I guess that's the reason why we're here, is because what the issue in this particular case is, is whether the motion to confirm that was filed by Pershing, Mr. Farrell's client, should be heard in federal court or state court. And the facts are essentially uncontested that I asked for $80 million, and they awarded me $10 million—I mean, $10,000. And the $10,000 that they awarded me was to pay me because they wouldn't force the president of Pershing to come to New Orleans and testify before the arbitration panel. That's for another day in time. But in any event, the issue that we're talking about today is on the jurisdictional amount. And as the court is aware, this is a fairly well-developed area of the law of which the Fifth Circuit has not had the opportunity to speak to it. But in essence, the issue is whether it's the $10,000 award that establishes the basis for the jurisdiction or whether it's the $80 million award request that I made. And the law, to be quite frank with you, is split among the various circuits, and I think you all have the task of trying to draw a line through the various issues in the Fifth Circuit to develop what the law should be. We all agree that the Federal Arbitration Act does not set forth a federal cause of action. I agree with that today, but I've got to tell you, until my law clerks told me that after the arbitration award was done, I was surprised. But in any event, the FAA does not present a federal question. So the only way you can establish jurisdiction under the FAA is through diversity jurisdiction or through what's referred to as look-through jurisdiction. In other words, if I had alleged a federal cause of action in my arbitration award or complaint, it's arguable, not conclusive, but it's arguable that that would be a federal cause of action. But we didn't allege any federal cause of action, and as indicated, this all arises under the Louisiana Blue Sky Law. Now, if Pershing has its way— But there is diversity, isn't there? Yes, ma'am, that's correct. If they have their way, they want a liberal interpretation of the diversity statute in such a way where, in essence, makes any claim that's— whether our initial claim was over $75,000, would make it subject to federal jurisdiction. And I think in this court attempting to arrive at a conclusion as to how this rule should be applied, given the split in the circuits, I would ask that the court focus on several things. The first one is, and it arises under Judge Jolly's case, and I know he remembers the Otto Rental Association case, it would make this case easy to resolve if a motion to compel arbitration had been filed in the beginning because the law in the Fifth Circuit would be that the filing of the initial requirement for arbitration creates jurisdiction for the court to look at it for the whole spectrum of the litigation. That did not occur here. The litigation that occurred prior to this only occurred when Mr. Farrell filed against certain people not being entitled. Yeah, well, let's work on that for a second because let's assume, you know, the Fifth Circuit says, suppose they had come into court and filed a motion to compel arbitration, and then you got the $10,000 award. If the argument is that there's no jurisdiction because it's below the jurisdictional amount, the award is below the . . . it seems to me we would . . . you can't have both rules coexisting in this circuit. Well, I think that . . . Because, you know, because you would have absolutely lost jurisdiction at that point. Yes, ma'am. I think that the Otto Rental case in this circuit says that if that motion to . . . if that motion to compel arbitration is filed initially, then the dollar amount of the arbitration is controlling. I think that's what Otto Rental says. Now . . . Once you get jurisdiction, you've got it. That's right. That's what that case says. And I'm not here to argue. But that's not the case here, and that's the reason why I'm drawing the line. What did happen is Pershing filed against 16 people to say that, look, they're not entitled to arbitrate. None of these people are plaintiffs in this case, in this court. In the Pershing v. Bevis case, 606 fed at 754, said they're right. Those people are not entitled to arbitrate. But none of those people are in this proceeding. Second thing, this is the second line that I think that exists that assists the court. This case comes up in the area of a motion to confirm, to confirm an arbitration. None of these decisions, none of these circuit court decisions are motion to confirm. The Busbee case out of Judge Mill's backyard over there in Mississippi hits the nail right on the head. If you had to write a brief that supports our position, it's the Busbee case because it's a motion to confirm, a case that was decided a couple of months back. And it hits the nail right on the head in terms of saying that when it is the party that files the lawsuit, then that jurisdiction is controlling. And that's exactly what happened here, that they filed the motion to confirm, and there's no cases, no cases, that say that the jurisdictional amount is alleged and their petition is not controlling. Now, I'll jump the gun a little bit and deal with the motion to vacate because it's coming. In this lawsuit, in response to what they filed, after we realized we were in the wrong place, and we were, and I realized that there wasn't federal jurisdiction, I realized that I had to file because of the 90-day rule, I realized I had to file it in the right location. And I filed our motion to vacate after I dismissed it in New York, in Louisiana. Now, there'll probably be much in state court, and there'll be much to do about that, but when I looked at the law, there was no question in my mind, very surprisingly to be honest with you, that the jurisdictional amount of the motion to vacate, that most of the law was in favor of a state court action. There's no question about that when it's below $75,000. Now, so I stand here today saying, I just want to be in the right place. And that's really what this is about today, is whether or not the federal court or the state court is the right place for an award less than $75,000. On the motion to vacate, which is not really before the court, we filed it as a counterclaim in this proceeding, but the district court properly ruled that the counterclaim is irrelevant for purposes aside in this motion, and moreover, defendant's counterclaim does not request that the court reopen the arbitration proceedings. The second one is the important part, because under the third category of potential ways to open an arbitration proceeding, the remand proceeding is one of them, and we did not request that the arbitration proceeding be reopened in this proceeding. What's wrong with just a flat rule that says that the amount of the demand is what is controlling, and I realize that's the D.C. Circuit and may not be the majority position, but at least that's a rule and it makes it clear and we don't have to have arguments about which court. I know that's the same issue they were dealing with in 1789, and I'm not being flippant about that, Ms. Jones, but we have in this country a system of state and federal courts, which is very complex, and it's not the most efficient way to do it. There's no question, but had you just filed a lawsuit, rather than their jumping the gun and getting into arbitration first, that would have been in federal court, or that would have been subject to removal in federal court jurisdictions, so you're not really ousting the state courts of something they should have had to begin with. Right. I agree with you 100%. It's the most efficient way to do it. It's just not the law, and we have a complex system. Well, there's just, I mean, you're saying it's not the law, but it is the law, at least in the D.C. Circuit, and the Fifth Circuit hasn't really ruled on it. Well, the D.C. Circuit, the Krantz case, is not a confirmation case. It's not even a vacation case. It's an intervention case by one of the commissioner of securities in that area, and other than it citing the law, and they do a real good job, I've got to admit, of describing the status of the law, it's neither fish nor fowl in terms of it being a confirm or vacation. I would respectively tell the court to look at the United States Supreme Court case of, bear with me just a minute, Vadden v. Discover Bank, 556 U.S. 49, and the court had to deal with some of the issues that we're dealing with here, and it's a close decision. I think it's a 5-4 decision of which goes in our direction, and it deals with looking through. In other words, in an arbitration proceeding, do you look through from what is alleged in their complaint, which was $10,000, to what I have alleged in my arbitration complaint of $80 million? I've got to admit, it's a pretty gross disparity, but that's the question, is what is the legal basis for looking from what's alleged in that complaint to the totality of the case? And in that Vadden case, there's a lot of argument in the sense is that you look at the totality of it. You don't look just at the complaint, that you go in and you look at the totality of it. What's the totality that we're supposed to look at here? I would— I mean, it seems to me it's a dichotomy. It's either the amount sought or the amount awarded in arbitration. I don't see any totalities here. Well, if you read the Vadden decision, and I could try to say it a thousand times, but I can't write it any different than the way that they— Tell me what it says. What does the Vadden case say? Well, what they tried to do is they had a counterclaim that was filed as a federal cause of action, and in a particular case, they wanted them to look through to the counterclaim, similar to what's going on here, to try to establish federal jurisdiction. It was a bank that filed suit on a— What is the simple holding of that case? And the simple holding of that case is that the bank filed suit against them to collect on the credit card. That's a state court claim. The defendant filed a counterclaim based on a federal cause of action as a defense, and the Supreme Court held, you look at the original complaint that's filed, and the arguments kind of went, well, if they had filed first, it would have been a federal cause of action. They said no woulda, coulda, shoulda. This is the way that it came down. Which page is that on? No woulda, coulda, shoulda. That's not quite in there, but that's the essence. If you look at it in a well-defined opinion, and it's a close opinion in terms of they're saying that the complaint itself controls it. Now, I can go through with the court the law on strict construction of amounts. Y'all have heard that a thousand times. And I can tell you that the state court is residual. In other words, the way that this country works is that if it's not specifically provided for by the Constitution or by statute, then those powers rest with the state courts in terms of jurisdiction. It's a complex relationship. There's no doubt about it. And this happens to be one of the situations where the courts have not gone in and looked at that. Thank you. Thank you, Mr. Price. Mr. Farrell, we'll hear from you. May it please the Court, let me start with the Vadin case that Mr. Price just referred to. That case has nothing to do with the situation before us. That was a case involving a question of federal question jurisdiction, not amounting controversy. Judge Jones, I think you've put your finger exactly on the problem with the position taken by Mr. Price and his clients. Had this issue arisen first prior to the arbitration in the context of either a motion to compel arbitration or a motion to enjoin an arbitration, there clearly would have been federal jurisdiction. This circuit has spoken in the Webb case and in others and made 100 percent clear. What do you do with the general principle that you look to the face of the complaint? And here the face of the complaint says that the value of this case is $10,000. Well, I would respectfully disagree, Your Honor. The face of my complaint, which I filed, which was a complaint to confirm arbitration, sets forth very clearly that the amount of controversy is $80 million. We indicate in our complaint that there's diversity of jurisdiction in excess of $75,000. We indicate that the underlying arbitration claim involved $80 million, and we seek in our prayer an order confirming the arbitration award and declaring that we are not liable to these plaintiffs for the $80 million that they sought against us. So just if you want to deal just strictly with the procedural issue of looking only at the face of the complaint, the face of my complaint clearly gives rise to an $80 million claim, not a $10,000 claim. With respect to the Karsner case, which is the D.C. Circuit case, with due respect to Mr. Price, that case was a confirmation case. That case began as a motion to confirm an arbitration award. The award was less than $75,000, and there was a motion to confirm it. The court found that there was jurisdiction and that the amount of controversy was satisfied because the underlying arbitration claim had a demand for more than $75,000. It arose in exactly the same context that this case arises. And it is not a minority rule, at least the way I read the cases. The circuits that have followed that approach, which is called the demand approach, are the D.C. Circuit, the First, the Ninth, and the Tenth Circuit. It is, in fact, the majority approach. And as the court pointed out in Karsner, going the other way, which is called the award approach, raises exactly the problem that Judge Jones put her finger on, which is jurisdiction over arbitration-related issues should not turn on which point in the process the issue arises. The economic reality here, everybody realizes that this is a case over $80 million. Everybody also realizes that Mr. Price would not be opposing confirmation and also moving to vacate in his separate proceeding unless he intended to go back and try and get a second bite at the $80 million apple. It's not $10,000. $10,000 is not motivating Mr. Price. No, in fact, the $10,000 was in his favor, and we actually sent him a check for $10,000, and he refused to cash it. He's got plenty of money. I believe that's probably true, Your Honor. Now what's going on here in his motion to vacate papers, he has very carefully avoided saying he wants to reopen the case because he obviously realizes that would create a problem for him. But obviously everybody knows that's what's going on, and the Fifth Circuit jurisprudence allows you to look at that reality. I would point to the remand cases, particularly the de Aguilar case, where the plaintiffs in that case carefully in their state court petition said, at first they said they didn't state an amount in controversy. They then later came back and said we affirmatively want less than $50,000, and that by itself was not enough to defeat remand and to justify a removal because the court said it was a wrongful death case, you may recall, arising out of a plane crash. The court said it's facially apparent here that what the plaintiffs are ultimately going to try to recover is more than $50,000. What the court said is if the plaintiffs want to avoid remand and keep the case in federal court, then they need to enter into some kind of binding stipulation that says they'll never ask for more than $50,000. Mr. Price could do that here. He could tell the court in some binding way that if we get this arbitration award vacated, we're not going to try and reopen the case and we're not going to try and seek $80 million again, but of course you're not going to, I respectfully suggest, you're not going to hear that. Now, on Mr. Price's side of the ledger, if we're counting circuits and trying to figure out, you know, what's the rule out there among the courts, on his side he would point you to a Sixth Circuit case and an Eleventh Circuit case. I would respectfully submit that those cases really aren't in conflict with the rule that I'm advocating. Factually, in those cases, there was an arbitration award for less than the jurisdictional threshold and the party that was seeking to confirm the award, excuse me, to vacate the award and to get out of the award, was the defendant who wanted zero instead of $50,000 or $60,000, whatever the number was in those cases. In that context, in those two cases, no matter how the motion to vacate or the motion to confirm came out, the result was going to be something less than $75,000 because it was the defendant who was arguing for $60,000 to zero, for example. Those cases are not this case where the party seeking, avoiding confirmation and seeking to vacate is the plaintiff who got a zero award. The Sixth and the Eleventh Circuits in subsequent cases have dealt with that precise situation where it's the plaintiff in the arbitration who got a zero award who is the one resisting confirmation and said in that context the amount in controversy is the amount in the underlying arbitration claim because that's obviously what the plaintiff is trying to accomplish is get the zero award wiped out so he can get back into arbitration or get back into court and get the original amount he claimed. That approach is referred to in the cases as the remand approach, and the Sixth and Eleventh Circuits, which are the two circuits on which Mr. Price relies, have subsequently adopted that remand approach. Let me ask you, you say you moved for declaratory judgment? It wasn't styled a declaratory judgment. Our complaint is styled as a complaint to confirm the arbitration award. What I was referring to was our prayer, and let me get the exact. Well, we don't base amount in controversy on your prayer. I'm not quite sure how you would have done it, but had you had a separate complaint for declaratory judgment, there's no question we would have measured that in terms of the $80 million. I didn't mean to suggest that there was a separate denominated count for declaratory judgment. The other point I would make is I think we have pretty clear guidance as to how the Supreme Court would ultimately resolve this question, and that's in the form of the Horton v. Liberty Mutual case, which I think is cited in both briefs. It is 367 U.S. 348. Now that was admittedly not an arbitration case, but it's very analogous. That was a case from 1961 that involved a workers' comp matter, and under the old workers' comp scheme in Texas, you went first to the commission or the board and made your claim, and the case arose back when the amount in controversy was $10,000, and the amount that was before the workers' comp award was $14,000. That's what the injured worker sought. The comp board awarded $1,000 below the then $10,000 jurisdictional amount in controversy. There was a subsequent suit by the insurer saying, wait a minute, we shouldn't have to pay anything. We shouldn't have to pay this $1,000 award that the comp board awarded. The injured worker said, wait a minute, you can't file that case in federal court because there's only $1,000 in controversy. The insurer said, well, no, because the underlying comp claim that gave rise to this in the first instance, the proceeding before the board, was for $14,000, and the Supreme Court said, that's right. We look at the economic reality of the situation, and the economic reality is that this was a $14,000 claim, an amount above the amount in controversy. I would point also to the language of some of the court's cases, including, in particular, I'm probably going to mispronounce this, but the Dutterwitz case, which was a usury case, and the court there said that in assessing the amount in controversy, what we look to determine is the, quote, pecuniary consequences to those involved in the litigation. This is not an issue of me trying to avoid the general rule that diversity statutes are strictly construed. If I were arguing to the court that you should ignore the amount in controversy, then you would tell me, no, we strictly construe there is an amount in controversy. The issue here is simply how do we determine what that amount in controversy is, and under this court's precedent, we determine that by looking at the, quote, pecuniary consequence to those involved in the litigation. The pecuniary consequence to the parties involved in this litigation is $80 million. Unless the court has any further questions, I would yield back the balance of my time. Thank you, Mr. Farrell. Mr. Price, you have some time for rebuttal. Yeah, as you're aware, there are certain concepts that have evolved with the way we determine jurisdiction. Strict construction, you hadn't heard that from the other side. Concept you want to infer jurisdiction, not addressed in their brief. St. Paul Markley and Nimitz, you haven't heard that from the other side. The courts have held that courts possess only power granted by statute and the Constitution. You hadn't heard it from the other side. And then finally, statutory construction says you presume that Congress acts intentionally in an omitting language. That's the Brucella Doctrine of Mississippi Obtronics Corporation, the Supreme Court. So there's no doubt what he wants is more efficient. And Judge Jones, it would be an easy rule to say that if the arbitration amount is alleged to be more than $75,000, then federal jurisdiction is going to be continuing under the FAA. But I'll respectively submit that it's not a judicial decision, it's a legislative decision, and that it can be presented to Congress for the changes to be made in the law. Garcia clearly indicates that the pleadings are controlling. The Second Circuit, which is where the arbitration agreement says the law is controlling, this adds another wrinkle to it, agrees with my position. Well, in opposition to the motion to confirm, you'd have a motion to vacate, right? That's right. Supplemental jurisdiction. The motion to vacate is filed as a compulsory counterclaim in this case. I understand that. But what I'm saying is that the court would inevitably have to, for some reason, get into your— I mean, there are only a few bases for not confirming a federal arbitration award, and that's fraud or extreme deviance from the law. There's another one. I can't remember it. But the amount of $80 million would inevitably come into that, wouldn't it? Right. What I would say to you in response is, number one, the district court ruled that the counterclaim shouldn't be considered for jurisdictional purposes. Issue wasn't appealed to this court. And then the second issue is that the Batten case deals directly with that point that you don't look through to the counterclaim in terms of establishing federal jurisdiction. I mean, the language from Batten says a completely preemptive counterclaim remains a counterclaim and thus does not provide a key capable of opening a federal door. Well, and remind me again, what's the strongest case in favor of your award approach? The law in the Fifth Circuit that was decided under the pleadings controlling the Garcia case is clear in its multiple cases. There's no case—let me say that again— there's no case in the United States that supports this position on the confirmation. There are some on the motions to vacate, but they're not on the confirmation. And I respectfully ask the court to look at the Batten case. They went through in a very artful manner dealing with a lot of the issues. We've gone back and forth on this case. As a personal note, I'll be happy wherever it is. I just want it to be the right place. Thank you. Thank you, Mr. Price. That completes the arguments we have on the oral argument calendar for this afternoon. So this panel stands in recess until tomorrow morning at 9 a.m.